IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SNYDER RANCHES, INC.,

    Plaintiff,

v.                                                                                No. 2:23-CV-00636-MLG-GBW

OXY USA INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS**

Plaintiff Snyder Ranches, Inc. ("Snyder") owns three natural gas wells in Eddy County, New Mexico, which Defendant Oxy USA Inc. ("Oxy") operates. Doc. 35 at 1-4 ¶¶ 2-4, ¶¶ 12-14. As the operator, Oxy has a statutory obligation under the New Mexico Oil and Gas Proceeds Payment Act ("NMPPA" or "the Act"), NMSA 1978, §§ 70-10-1 to 70-10-6, to pay Snyder the proceeds arising from the sale of oil and gas connected to those wells. *Id.* at 3-4 ¶ 14. Oxy also has a corresponding duty to pay interest on those proceeds if made untimely (as defined in the NMPPA).[1] *Id.* at 6-7 ¶ 26. Snyder alleges Oxy failed to comply with this second obligation and raises two theories of liability: (1) negligence per se, asserting that Oxy failed to pay statutory

---

[1] The amount of statutory interest owed depends upon whether Section 70-10-4 or Section 70-10-5 applies. In the instance that a well operator does not know who is entitled to the proceeds and cannot make a payment within the required period, the NMPPA requires the operator-payor either "create a suspense account on [its] books for such interest or . . . interplead the suspended funds into court." NMSA 1978, § 70-10-4(A) (1991). The owner-payee is then entitled to interest on the suspended funds, which is a "discount rate charged by the federal reserve bank of Dallas to member banks plus one and one-half percent on the date payment is due" and calculated after there is a final legal determination as to who owns the proceeds. § 70-10-4(B). The NMPPA also prescribes a remedy for when an operator fails to make a timely payment, had the information required to do so, and still failed to provide timely proceeds. NMSA 1978, § 70-10-5 (1991). There, the operator must pay the proceeds along with a punitive eighteen percent interest rate unless one of four exceptions apply. *See* § 70-10-5(A)-(D).

1

interest on payments under the NMPPA to itself and other well owners and (2) fraud, claiming Oxy misrepresented and or omitted key details on their monthly check stubs. *Id.* at 9-14 ¶¶ 38-67. It seeks damages and equitable relief on behalf of itself and a putative class. *Id.* at 14-16 ¶¶ 68-78.

Oxy moves to dismiss all but one portion of Snyder's claims. *See generally* Doc. 40. Specifically, Oxy requests dismissal of Snyder's negligence per se claim regarding payments of the putative class that were allegedly held in suspense under Section 70-10-4. *Id.* at 4-6. It also contends that Snyder's fraud claim should be thrown out because it is precluded by the parties' contract and is inconsistent with the NMPPA. *Id.* at 8-13. Lastly, Oxy requests the Court dismiss all claims for equitable relief asserting that they are legally incognizable. *Id.* at 14-22.

## DISCUSSION

**I.     Snyder's pleading states a plausible claim for relief.**

In support of its motion, Oxy first contends that Snyder "offers no factual support for [its] allegations" and that the negligence per se averments in the First Amended Class Action Complaint ("Amended Complaint"), Doc. 35, are "naked assertions with no factual enhancement." *Id.* at 5 (text only). To be sure, Snyder's Amended Complaint could be more detailed, but it contains several allegations that, when viewed as a collective whole, provide a sufficient basis to substantiate Snyder's claims. *See, e.g.*, Doc. 35 at 3 ¶ 8, 7-8 ¶¶ 29-31, 8 ¶ 33, 10-11 ¶ 47. And at this stage of the litigation, that is enough. *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) ("There is a low bar for surviving a motion to dismiss, and a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely[.]" (text only)).

## II. Oxy's request to dismiss Snyder's claims regarding payments held in suspense or escheated is premature.

Oxy next challenges Snyder's standing to bring claims on behalf of putative class members whose payments were held in suspense or escheated under Section 70-10-4. Doc. 40 at 5-7. It reasons that Snyder should not be permitted to represent these putative class members because the operative complaint does not allege that Snyder's payments were held in suspense or escheated. *Id.* at 6-7. Snyder responds that the question is better suited for class certification. Doc. 42 at 8.

The parties' dispute touches on the "disjuncture" that arises when a plaintiff seeks to represent other class members who have suffered similar but not identical harms. William B. Rubenstein, 1 Newberg & Rubenstein on Class Actions 138 (6th ed. 2022) [hereinafter Class Actions]. In such circumstances, distinguishing between considerations attendant to class certification and those material to standing is not always straightforward. *Seutter v. Mead Johnson Nutrition Co.*, No. 24-2179, 2025 U.S. Dist. LEXIS 8415, at *12 (D. Minn. Jan. 16, 2025) ("[T]he issue of whether class certification should be reached before standing is a 'difficult chicken-and-egg question.'" (quoting *Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013))). Further adding to the confusion is the inconsistent means courts have taken in resolving the issue, relying on two separate approaches: the "class certification approach" and the "standing approach." *Compare Sosna v. Iowa*, 419 U.S. 393, 402-03 (1975) (embracing the class certification approach), *and Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) (same), *with Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (adopting the standing approach), *and Lewis v. Casey*, 518 U.S. 343, 358 (1982) (same). While both approaches "aim to measure whether the proper party is before the court to tender the issues for litigation, . . . they spring from different sources and serve different functions." *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) (citation and alteration omitted).

Courts applying the standing approach "simply find that the class representative lacks standing to pursue the class members' claims because she did not suffer their injuries in this disjuncture situation." Class Actions, at 138. By contrast, the class certification approach provides that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Melendres*, 784 F.3d at 1262 (quotation marks and citation omitted). The latter has emerged as the majority view. *See Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 308 n.1 (5th Cir. 2024) (citing cases and noting "the class certification approach's prominence in the district courts of most circuits"); *see Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012) ("[T]here has been a growing consensus . . . that class certification is 'logically antecedent,' where its outcome will affect the Article III standing determination, and the weight of authority holds that in general class certification should come first." (citation omitted)); *see also Fallick*, 162 F.3d at 424 (noting the district court correctly determined the plaintiff had standing before moving to representation of the absent class members); *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 133 (3d Cir. 2022) (approving of the district court's recognition that class representation concerns "are distinct from the requirements of Article III"); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) ("Requiring that the claims of the class representative be in all respects identical to those of each class member in order to establish standing would confuse the requirements of Article III and Rule 23." (quotation marks and alteration omitted)).

This Court joins the majority and holds that the class certification is preferable to the standing approach. *See* Class Actions, at 153 (explaining why the class certification approach is a better means for addressing disjuncture problems). Accordingly, applying that analysis to the facts

4

presented, the Court notes it is undisputed Snyder has standing to litigate its negligence per se claim. *See* Doc. 40 at 3; Doc. 42 at 9. So, whether Snyder may represent the putative class on the allegations related to suspended or escheated funds will be assessed on the "criteria encompassed in Rule 23[.]" *Fallick*, 162 F.3d at 423. And "any issues regarding the relationship between the class representative and the passive class members[,] such as dissimilarity in injuries suffered[,] are relevant only to class certification, not to standing." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019). Resolution of Oxy's request to dismiss Snyder's claims for unpaid interest on payments held in suspense is therefore better dealt with during class certification.

### III.   Snyder will be permitted to move forward with its fraud claim.

Snyder's Amended Complaint alleges Oxy failed to inform owners that they were owed statutory interest, in that, Oxy did not indicate (1) whether statutory interest was included on their check stubs, (2) the amount of such interest, or (3) explain how such a sum was calculated.[2] Doc. 35 at 11-12 ¶ 53, 13 ¶¶ 62-63; Doc. 42 at 17. Snyder contends that Oxy had a duty to disclose that information under the NMPPA, and further alleges that Oxy failed to provide interest calculations to deceive putative class members. Doc. 35 at 11-14.

Oxy denies it had any affirmative legal obligation to provide Snyder (or any putative class members) with information about interest owed or paid. Doc. 40 at 10-16. To that end, Oxy argues that the operative contract defines the parties' obligations and Snyder "cannot impose extra-contractual duties in tort." *Id.* at 9. Oxy points to two cases from this District where the court found that the plaintiffs' fraud claims were precluded by contract. *Id.* at 8 (citing *Anderson Living Tr. v.*

---

[2] For now, the Court, as it must, takes these allegations as true. *Robbins v. Okla. ex rel. Dep't of Hum. Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (reiterating the "bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.").

5

*XTO Energy, Inc.*, No. 13-CV-941, 2014 U.S. Dist. LEXIS 187497, at *23 (D.N.M. Nov. 24, 2014) [hereinafter *XTO*] (reasoning the plaintiff could not "assert a claim of tortious fraud to obligate [a defendant] to perform duties it never assumed"), *and Anderson Living Tr. v. ConocoPhillips Co.*, 952 F. Supp. 2d. 979, 1045 (D.N.M. 2013) [hereinafter *Conoco*] (declining to "hold the [d]efendants liable in tort for the breach of a duty that the parties have agreed, in contract, will not cause the [d]efendants to incur liability")). But these cases are distinguishable because the nature of the parties' underlying obligation differs. The *XTO* and *Conoco* plaintiffs sought royalties—which are creatures of contract—whereas Snyder seeks interest on late paid proceeds—which arises from the NMPPA. *See Duvall v. Stone*, 1949-NMSC-074, ¶ 15, 213 P.2d 212 (defining "royalty interests" as "a share of the product or profits . . . reserved by the owner for permitting another to develop his property for oil and gas" created by reservation in a deed or by oil and gas leases); *accord* Doc. 40 at 9 ("Contracts create royalty interests."). In this case, Snyder seeks to enforce a statutory duty arising under the NMPPA, not a contractual duty. *Compare* Doc. 35 at 11-12 ¶¶ 53-54, *with XTO*, 2014 U.S. Dist. LEXIS 187497, at *20-22, *and Conoco*, 952 F. Supp. 2d. at 991-94. This distinction is determinative because the New Mexico Supreme Court has previously ruled that parties are prohibited from contractually altering owners' rights to receive interest under the NMPPA. *See First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015-NMSC-004, ¶ 21, 345 P.3d 310 (ruling that Section 70-10-4 "cannot be contracted around"). As "the ultimate expositors of state law," the state Supreme Court's decision is controlling. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *see Moreno v. Zimmerman*, No. 21-8066, 2023 U.S. App. LEXIS 19053, at *12 (10th Cir. July 26, 2023) ("If the state's highest court has addressed the issue before us, we are bound by their conclusion.").

*First Baptist* is material to Oxy's argument for a second and independent reason. That decision holds that Section 70-10-4 of the NMPPA "puts the onus on the payor . . . *to furnish the correct party with a division or transfer order setting forth proper interest to which the owner is entitled*[.]"[3] 2015-NMSC-004, ¶ 14 (emphasis added). The Court reads this language to mean what it says. Oxy has a duty to provide accurate and detailed information regarding the payment of interest on late-paid proceeds on the relevant division and transfer orders. *Id*. Snyder's allegations that Oxy did not comply with this mandate and its related claims that this omission resulted in misrepresentations and misinformation are therefore sufficient to state a claim for relief. "Whether [Snyder] will have a difficult time [later] establishing the merits of its claim is of little import now." *Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017) (cited approvingly in *Clinton*, 63 F.4th at 1276). The Court finds that Snyder has sufficiently plead fraud claims to clear the low hurdle imposed at the motion to dismiss stage.

**IV.    Oxy characterizes Snyder's requests for equitable remedies as premature and untenable.**

Snyder asks this Court for equitable remedies in the form of an accounting,[4] an order directing Oxy to disgorge any benefits derived from the allegedly improper and unlawful use of

---

[3] In reaching this conclusion, the *First Baptist* Court looked to the plain language of the NMPPA with the primary goal of "ascertain[ing] and giv[ing] effect to the intent of the Legislature." 2015-NMSC-004, ¶ 9 (quoting *Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 40, 320 P.3d 1, and *Lobato v. State Env't Dep't*, 2012-NMSC-002, ¶ 6, 267 P.3d 65).

[4] In its Amended Complaint, Snyder pleads accounting and an injunction as separate causes of action. Doc. 35 at 14-15. That is not quite correct. Both New Mexico state courts and other courts in this District have noted, "[a]n accounting and an injunction are remedies only and do not constitute independent claims for the purpose of this analysis." *Heimann v. Kinder-Morgan CO2 Co.*, 2006-NMCA-127, ¶ 20, 144 P.3d 111; *see Harvey E. Yates Co. v. Cimarex Energy Co.*, No. 12-857, 2014 U.S. Dist. LEXIS 183891, at *61 (D.N.M. Mar. 5, 2014) (noting the parties' agreement on the characterization that "an accounting is a remedy, not an independent claim."). Similarly, disgorgement is not a standalone claim for relief; it is a remedy. *Peters Corp. v. N.M. Banquest Invs. Corp.*, 2008-NMSC-039, ¶ 32, 188 P.3d 1185 ("Disgorgement is an equitable

Snyder's statutory interest payments, and a permanent injunction ordering Oxy to pay statutory interest in any future late payments. Doc. 35 at 14 ¶ 69, 15 ¶ 72, 16 ¶ 77. Oxy argues the Court should dismiss these requests because such remedies are available only if Snyder lacks another adequate legal remedy. Doc. 40 at 14-15. But Snyder may "plead both equitable and legal relief, although [it] may not . . . ultimately recover under both theories." *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig.*, 288 F. Supp. 3d 1087, 1259 (D.N.M. 2017). *See* Fed. R. Civ. P. 8(d)(2)-(3); *Kaiser v. Bowlen*, 181 F. Supp. 2d 1200, 1203 (D. Colo. 2002) ("Alternative theories of relief are permitted at the pleading stage of litigation."). The form of relief Snyder may be afforded, should it prevail on the merits, will be determined at a later date. *See, e.g.*, *Chieftain Royalty Co. v. BP Am. Prod. Co.*, No. 16-CV-444, 2017 U.S. Dist. LEXIS 181475, at *17 (E.D. Okla. Nov. 2, 2017) ("The form that relief takes, after the merits of other claims are determined, will be ascertained later in this case."). For now, "it is premature to determine whether one or all of the bases for equitable relief has merit." *Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334, 2018 U.S. Dist. LEXIS 96860, at *12 (E.D. Okla. June 7, 2018).

## CONCLUSION

For the reasons stated in the foregoing, the Court hereby orders that Oxy's motion to dismiss, Doc. 40, is denied.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

remedy whereby a wrongdoer is forced to give up the benefits obtained as a result of his wrongdoing."); *accord Miller v. Bank of Am., N.A.*, 2015-NMSC-022, ¶ 22, 352 P.3d 1162 (noting disgorgement is an equitable, nonpunitive remedy). Snyder's attempt to characterize it as a cause of action is similarly incorrect.