IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SNYDER RANCHES, INC.,

    Plaintiff,

v.                                                             Civ. No. 23-636 MLG/GBW

OXY USA INC.,

    Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

THIS MATTER comes before the Court on Plaintiff's Motion to Compel (*doc. 145*) (hereinafter "Motion"). Having considered the Motion, the attendant briefing (*docs. 150, 151*), and the relevant case law, the Court will GRANT IT.

**I.    BACKGROUND**

This case arises from a dispute under New Mexico oil and gas law between Plaintiff, the owner of three natural gas wells in Eddy County, New Mexico, and Defendant, the operator of those wells. *See doc. 35* at ¶¶ 1-4, 12-14. Plaintiff filed suit in state court on June 26, 2023, *see doc. 1-2*, and Defendant removed the case on July 28, 2023, *see doc. 1*. Plaintiff's operative Complaint asserts claims for negligence per se (based on Defendant's alleged violation of the New Mexico Oil and Gas Proceeds Payment Act ("NMPPA")), breach of duty to investigate and pay royalties, and fraud.

1

*Doc. 35* at ¶¶ 38-67.  Plaintiff seeks both compensatory and punitive damages as well as equitable relief on behalf of itself and a putative class.  *Id.* at ¶¶ 68-78.

Plaintiff filed its Motion on October 20, 2025.  *Doc. 145*.  The Motion sought to compel Defendant to provide full and complete answers to Interrogatories 18 & 19 and Requests for Production 32 & 33 in Plaintiff's Fourth Set of Interrogatories and Third Set of Requests for Production.  *Id.* at 1.  Defendant filed its Response on November 5, 2025.  *Doc. 150*.  Briefing was complete with the filing of Plaintiff's reply on November 19, 2025.  *Doc. 151*.

## II.     LEGAL STANDARDS

### a. Scope of Discovery

The Federal Rules of Civil Procedure provide, generally:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed R. Civ. P. 26(b)(1).  Evidence is relevant if it has any tendency to make a material fact more or less probable.  Fed. R. Evid. 401.  Information "need not be admissible in evidence to be discoverable," Fed R. Civ. P. 26(b)(1), and discovery rules "are to be accorded a broad and liberal treatment," *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  However, "Rule 26 vests the trial judge with broad discretion to tailor discovery

2

narrowly." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

A Court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Where one party improperly fails to respond to another party's discovery requests, the requesting party may move to compel disclosure. Fed. R. Civ. P. 37(a)(3)(A).

### b. Motions to Compel

Rule 37 provides the mechanism to compel discovery from a person or party who "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents … as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (internal quotation marks and citation omitted); *see also Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) ("[W]hen the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the

3

burden to show the relevancy of the request.").[1] Once the moving party has met the initial burden, or "[w]hen the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Moses*, 236 F.R.D. at 671; *see also Mirror Worlds Techs., LLC v. Apple Inc.*, 2016 U.S. Dist. LEXIS 163118, at *3 (E.D. Tex. Mar. 17, 2016) ("Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." (citation omitted)).

### III. ANALYSIS

#### a. Crawford Interest Plus Pack ("Crawford IPP")

As a threshold matter, the Court will briefly describe the tool at the center of the parties' discovery dispute: the Crawford Interest Plus Pack. Crawford IPP is a software program that is part of Defendant Oxy's revenue system. Crawford IPP is an "overlay" or "bolt-on" to Oxy's accounting system which can be used to identify potentially late payments and calculate interest on those flagged payments using a manually selected

---

[1] Additionally, the party moving to compel discovery must certify that he "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Plaintiff has met this prerequisite. *See doc. 145* at 5.

interest rate.  *Doc. 150-3* at 3; *see also doc. 150-1* at 4-6, 9; *doc. 150-5* at 6-7.  The program does not have the ability to determine which potentially late payments are *actually* late under a relevant statute or determine which interest rate is applicable.  *Doc. 150* at 4; *doc. 150-4* at 3.

### b. Interrogatories 18 & 19 and Requests for Production 32 & 33 ("Disputed Requests")

Interrogatory Nos. 18 & 19 ask Defendant:

<u>No. 18:</u> Using the interest rate provided in § 70-10-4 of the Act, state the total amount of interest calculated for payments made to Owners in New Mexico Wells utilizing the Crawford "Interest Payment Plus Pack" (IPP) as described by Oxy's corporate representative Cory Crow during his deposition on August 12, 2025.

<u>No. 19:</u> Using the interest rate provided in § 70-10-5 of the Act, state the total amount of interest calculated for payments made to Owners in New Mexico Wells utilizing the Crawford "Interest Payment Plus Pack" (IPP) as described by Oxy's corporate representative Cory Crow during his deposition on August 12, 2025.

*Doc. 145-1* at 3-4.

Requests for Production Nos. 32 & 33 ask Defendant to:

<u>No. 32:</u> Please produce all documents utilized in answering Interrogatories 18 and 19.

<u>No. 33:</u> Please provide the reports generated as a result of the Crawford IPP process performed in response to Interrogatories 18 and 19, showing the inputs and parameters used to perform such calculations and identifying the potentially late payments flagged and interest calculated per transaction.

*Id.* at 4.

5

Oxy objected to the interrogatories stating that they (1) were overly vague and ambiguous, (2) sought to compel Oxy to create documents that did not already exist and thus force obligations beyond those imposed by the rules of discovery, and (3) were disproportionate to the needs of the case because the interrogatories requested that Oxy calculate Plaintiff's claimed damages. *Doc. 145-2* at 4-7. In its response to Plaintiff's Motion, Oxy also argued that responding to the interrogatories would be unduly burdensome. *See doc. 150* at 10. When responding to Requests for Production Nos. 32 & 33, Oxy incorporated its objections to Interrogatories 18 & 19 and again objected that the requests for production sought to impose obligations and requirements beyond the applicable discovery rules by forcing Oxy to create documents. *Doc. 145-2* at 8-9. Because the objections to the interrogatories and the requests for production are functionally equivalent, the Court will address them together.

### 1. Whether the Requests are Vague and Ambiguous

In its response to the interrogatories, Defendant stated that Interrogatories 18 and 19 "can be read in multiple ways, leaving Oxy to speculate as to what is being requested, and [are] thus vague and ambiguous." *Doc. 145-2* at 5-6. More specifically, Oxy took issue with the use of the past tense verb "calculated," arguing that as written, the interrogatory requested *previously* calculated statutory interest payments which were already provided to Plaintiff. *Id.*

In its response to Plaintiff's motion, Oxy reaffirmed its assertion that the interrogatories as written ask about interest that has been calculated *previously*,[2] whereas Plaintiff's Motion asks for Oxy to use the Crawford IPP system to *calculate* (present tense) potential late payments and interest for New Mexico Owners as a whole based on Oxy's current revenue history data.  *Doc. 150* at 5.  Because this is not what the discovery requests sought, Defendant argued, Plaintiff's Motion should be denied.  *Id*.

Defendant's position borders on deliberately obtuse, and the Court finds it unavailing.  Plaintiff asked about previously performed calculations in Request for Production No. 31, in which it sought "a report from the data Oxy maintains in the ordinary course of business that identifies all of the Owners to whom Oxy has paid interest on proceeds from New Mexico Wells and the amount of such interest paid to each Owner."  *Doc. 145-1* at 4.  Further, the parties met and conferred over several weeks before Plaintiffs filed their Motion, *see doc. 145* at 5.  The language of Plaintiff's discovery requests clarified by the meet-and-confer process is sufficiently clear regarding the information requested.

---

[2] Oxy states that "[i]n the normal course of business, Oxy has used Crawford IPP to calculate interest to individual New Mexico owners, and has produced to Plaintiff the relevant information for those calculations and payments."  *Doc. 150* at 5.

7

## 2. Whether the Requests Compel Oxy to Create New Documents

Oxy next argues that Plaintiff's motion requires Oxy to create new information and data to respond to the interrogatories and requests for production, exceeding the bounds of permissible discovery. *Doc. 150* at 6.

A party is generally not required to create new documents under Rule 34. *See Lerblance v. Calyx Energy III, LLC,* 2024 U.S. Dist. LEXIS 116407, at *8 (E.D. Okla. July 2, 2024) ("It is well-settled that a responding party's obligations under Fed. R. Civ. P. 34 do not extend to nonexistent materials.") (citation omitted); *Seed Research Equip. Sols., LLC v. Gary W. Clem, Inc.*, 2011 U.S. Dist. LEXIS 99087, at *4 (D. Kan. Sept. 1, 2011) ("[T]he rules of discovery do 'not require a party to create or generate responsive materials (in this case, documents) but only to produce and allow inspection of 'items in the responding parties' possession, custody, or control.'") (internal citation omitted). However, several courts have found a distinction between creating new documents and "requiring a party to query an existing database to produce reports for opposing parties." *Mervyn v. Atlas Van Lines, Inc.*, 2015 U.S. Dist. LEXIS 144376, at *6 (N.D. Ill. Oct 23, 2015) (citing *Apple Inc. v. Samsung Elecs. Co.*, 2013 U.S. Dist. LEXIS 116493, at *3 (N.D. Cal. Aug. 14, 2013). As stated in *Apple Inc., supra*,

> [A] party should not be required to create completely new documents, [but] that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases, holding 'the technical burden…of creating a new dataset for the instant litigation does not excuse compelling production'" (internal quotations omitted)).

8

2013 U.S. Dist. LEXIS 116493, at *34.

The Court finds this distinction persuasive and will apply it here. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (holding that Google had to comply with a third-party subpoena and provide data sought by the government despite the fact that it would require Google to create new code to format and extract query and URL data from many computer banks); *Humphrey v. Leblanc*, 2021 U.S. Dist. LEXIS 151129, at *8 (M.D. La. Aug. 11, 2021) ("Case law makes clear that simply searching a database and providing the results therefrom does not require creation of a new document beyond the scope of Rule 34."); *Crocs, Inc. v. Effervescent, Inc.*, 2017 U.S. Dist. LEXIS 184498, at *11 (D. Colo. Feb. 8, 2017) ("[I]f information is stored in a database, requiring that reports be run from the database is not the creation of new evidence or discovery."); *In re eBay Seller Antitrust Litig.*, 2009 U.S. Dist. LEXIS 132817, at *7 (N.D. Cal. Oct. 28, 2009) (finding that the magistrate judge did not clearly err in compelling production of new dataset of records from a database, noting that "[t]he Federal Rules of Civil Procedure clearly contemplate the production of information from dynamic databases").

Under the facts of this case, the Court concludes that using the Crawford IPP to query an existing database within Oxy's custody and control does not amount to creating new information under Rule 33 or 34. As such, Plaintiff's interrogatories and requests for production which seek Crawford IPP results are not improper on that basis. As stated in *Mervyn*, "requiring a party to query an existing database to produce reports

9

for opposing parties is *not* the same as requiring the creation of a new document." 2015 U.S. Dist. LEXIS 144376, at *21 (citing *Apple Inc.*, 2013 U.S. Dist. LEXIS 116493, at *3). The Court acknowledges that Crawford IPP itself is not a database to be queried, but rather an overlay to Oxy's accounting system, SAP. *Doc. 150-4* at ¶ 3. However, SAP is a database (*see id.* at ¶ 5) from which Crawford IPP pulls owner payment information. *Id.* at ¶¶ 3, 5; *see also doc. 150* at 9. The fact that Crawford IPP itself does not store data is a distinction without a difference given that it is the tool used to query an existing dataset.

Defendant asserts that they have already produced multiple extracts of Oxy's SAP data, including "*existing* data identifying statutory interest calculated in the normal course of business using Crawford IPP for specific New Mexico Owners." *Doc. 150* at 9. Therefore, Defendant argues, Plaintiff can perform the same calculations that Crawford IPP would without the requested reports. While Plaintiff may use data that has been provided to determine its own interest calculations, that is not the same as knowing what Defendant's own software would flag as potential late payments. Reports produced by Crawford IPP would help show what Defendant could have, and perhaps should have, known about delinquent payments. Given this distinct basis of relevance, the requested reports and information are not duplicative of the discovery already provided.

10

### 3. Whether the Requests are Overly Broad, Unduly Burdensome, or Disproportionate to the Needs of the Case

In its response to Interrogatories 18 and 19, Oxy objects that the requests are disproportionate to the needs of the case because they demand that Oxy improperly calculate Plaintiff's claimed damages. *Doc. 145-2* at 6-7. The Court finds no evidence that this is accurate. Further, Oxy did not restate this objection in its response to Plaintiff's Motion. As such, the Court finds that it does not require further analysis.

Oxy's final argument against Plaintiff's Motion is that responding to Plaintiff's interrogatories and requests for production would be unduly burdensome. *See doc. 150* at 10. Based on the testimony of Oxy representatives and the exact parameters of Plaintiff's requests, the Court finds this argument unpersuasive.

It is incontrovertible that the information Plaintiff seeks can be produced by Oxy. *See doc. 145-4* at 6 ("It could flag potentially late payments… You could run it at the state level."); *doc. 150-5* at 6 ("I could run the program to generate the interest for New Mexico."). Further, Oxy has already done this sort of calculation for other states such as Wyoming and Utah. *Doc. 145-5* at 6. The question is whether its production would be so burdensome to Oxy that it outweighs the likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

To run the program, an Oxy employee would enter the set-up prompts into Crawford and the Crawford system would calculate the interest. *Doc. 150-1* at 5; *see also id.* at 6. Different interest levels would have to be inputted manually. *Doc. 150-5* at 7;

11

*see also doc. 150-6* at ¶ 5 ("Oxy's Crawford IPP contains two available interest rates for New Mexico – the default 18% simple interest rate and the discount rate charged by the federal reserve bank of Dallas plus 1.5 percent, which must be manually selected. To calculate interest at the lower interest rate, calculations must first be performed at the default 18% interest rate and then recalculated within Crawford IPP at the lower rate."). This process would flag potentially late payments and calculate the assumed interest thereon. Then the information related to statutory interest calculations could be exported out of Crawford into an Excel sheet or another common format. *Doc. 145-4* at 10. Running the program in this manner would not be burdensome according to Oxy's own statements. *See id.* at 7.

Oxy notes that the reports generated by Crawford IPP would not identify late payments bearing interest under the NMPPA. *Doc. 150* at 9; *see also doc. 150-5* at 10 ("If there were exceptions or exemptions outside of the normal interest calculation…it wouldn't account for them."); *id.* at 15 ("[I]t wouldn't take into account the exemptions."). Therefore, to determine whether a *potential* late payment identified by Crawford is an *actual* interest-bearing late payment requires individualized analysis. Performing this analysis to determine *actual* late payments would be a significant burden according to Oxy. *See doc. 150* at 10; *doc. 145-4* at 7.

Assuming, *arguendo*, that calculating actual late payments under the NMPPA would impose a significant burden on Oxy, that is not what Plaintiff is asking for.

12

Plaintiff asked Oxy to use the Crawford tool on checks processed during a specific period and tell them: (1) which payments Crawford IPP identified as potentially late and (2) how much interest Crawford calculated on those payments using each of the rates identified in the Act. *Doc. 151* at 2. Plaintiff is not asking Defendant to take on the burden that Defendant describes. Nonetheless, Defendant contends that, without undertaking the individualized analysis, the data provided would be inaccurate or misleading. Even accepting that proposition, it does not mean that the discovery request is per se improper. *See N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 52 (E.D.N.Y. 2018) ("[Defendant's] argument in opposition is instead founded on the purported unreliability and incompleteness of data it could produce…[w]hile [Defendant] can challenge the conclusions [Plaintiff] draws from the raw data, it cannot raise these challenges to avoid disclosure in the first instance."). The Court does agree that the lack of an individualized analysis reduces the relevance of the requested information. The lower relevance impacts the broader proportionality analysis demanded under Rule 26. Nonetheless, given the relatively low burden of running the initial Crawford IPP analysis and the relevance described above, the Court finds that Oxy has failed to establish that producing the reports requested by the Disputed Requests would be so burdensome to Oxy that it outweighs the likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

## IV. CONCLUSION

Plaintiff's Motion to Compel (*doc. 145*) is hereby GRANTED. Oxy shall produce full responses to Interrogatory Nos. 18 & 19 and Requests for Production Nos. 32 & 33 within a reasonable time.

The Court declines to impose costs or sanctions under Rule 37 at this time because Plaintiff did not request such relief and Defendant's objections were substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE